**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**DONALD M.,**

**Plaintiff,**

      **v.**

**Case No. 6:22-cv-06350-TPK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

**OPINION AND ORDER**

**Defendant**.

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on June 22, 2022, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 8), and the Commissioner has filed a similar motion (Doc. 12). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four**.**

## I. BACKGROUND

On February 14, 2019, Plaintiff filed an application for supplemental security income alleging that he became disabled on February 14, 2018. After initial administrative denials of his claim, a hearing was held before an Administrative Law Judge on July 13, 2020, followed by a supplemental hearing on May 26, 2021. Plaintiff, a medical expert, Dr. Washburn, and a vocational expert, Steve Cosgrove, all testified at the supplemental hearing.

The Administrative Law Judge issued an unfavorable decision on June 11, 2021. She first found that Plaintiff had not engaged in substantial gainful activity since his application date and that he had severe impairments including pulsatile tinnitus (subjective high frequency hearing loss) and bipolar disorder. Moving forward with the sequential evaluation process, the ALJ next determined that Plaintiff's impairments, viewed singly or in combination, did not meet the criteria for disability as set forth in the Listing of Impairments. She also found that Plaintiff was capable of performing heavy work and could continuously climb stairs, stoop, kneel, crouch, and crawl but could balance and tolerate exposure to moving mechanical parts, humidity, extreme temperatures, vibrations, and loud noises only frequently. Additionally, Plaintiff could climb ladders, ropes, or scaffolds and be around unprotected heights only occasionally, and he was limited to simple tasks requiring only routine decision-making.

The ALJ next concluded that Plaintiff had no past relevant work. She found, however,

based on the testimony of the vocational expert, that Plaintiff could do medium unskilled jobs such as hand packager, kitchen helper, and warehouse sorter, and also determined that these jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises two issues, stated *verbatim* as follows:

1. The Appeals Council improperly rejected the newly submitted opinion from Dr. Roger Cass.

2. The ALJ erred by substituting his own lay opinion for that of the medical opinion evidence and by failing to identify substantial evidence supporting the residual functional capacity.

Plaintiff's Memorandum, Doc. 8-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 53 years old at the time of the first administrative hearing, first testified that he rented a room in a house and that he was the room's only occupant.  He had attended college but did not graduate and he was a certified plumber.  He last worked as a janitor but lost that job due to a layoff.  Plaintiff explained that he could not work because he was too tired to do so and could not show up to work on a regular basis.  He attributed this to chronic fatigue immune dysfunction syndrome, depression, anxiety, Meniere's disease, and sleep apnea, which, taken together, caused not only fatigue but confusion, memory problems, and pain in his muscles and joints.

When asked about his physical and mental abilities, Plaintiff said that he could walk up half a flight of steps and had trouble standing.  He was able to bend, stoop, squat, and use his hands, but was unable to say how much weight he could lift or carry.  His ability to sit varied and he had significant short-term memory deficits.  Plaintiff also suffered from exercise-induced asthma and had difficulty sleeping.  He was able to cook using a microwave but relied on his sister to do his laundry.  Lastly, he testified about having ringing in his ears which distracted him.

At the second administrative hearing, Plaintiff again testified that he was not able to maintain a schedule due to his fatigue, which ultimately led to isolation and depression.  He said that he was constantly anxious and that this condition affected his sleep and also caused panic attacks.

The medical expert, Dr. Washburn, first explained that from what he saw in the record,

-2-

Plaintiff's heart condition should have no impact on his ability to work. He also noted that a CPAP machine had been prescribed for Plaintiff's sleep apnea but he did not appear to be using it. Dr. Washburn further testified that Plaintiff's chronic fatigue appeared to have a psychiatric component and that it was alleviated somewhat with Prozac, which would not be the case for true chronic fatigue syndrome. If it were a psychiatric condition, Dr. Washburn, who specialized in internal medicine, said he would not be able to comment on it. Given that, Dr. Washburn did not see any physical restrictions documented in the record, other than ones which might come from Plaintiff's tinnitus and inner ear issues.

Mr. Cosgrove, the vocational expert, was asked to assume that Plaintiff had no past relevant work. He was then asked a series of questions about a person with Plaintiff's educational and vocational background who could work at the heavy exertional level but who was limited to simple, repetitive tasks and who had some postural and environmental restrictions as well. In response, he identified several jobs that such a person could perform, such as hand packager, kitchen helper, and warehouse worker, and he also gave numbers for those jobs as they existed in the national economy. If the person could not do a fast-paced assembly line type of job and had to work in a low-stress environment characterized by only occasional changes in the work process and occasional decision-making, however, Mr. Cosgrove said that he or she could not be employed. The same would be true of a person who was off task 20% of the time or who would miss two or more days of work per week (or even per month).

### B.  Treatment Records

The relevant treatment records are well summarized in Plaintiff's memorandum and the Court will recount them here only briefly. As Plaintiff notes, he has a long history of being diagnosed with both bipolar disorder (a diagnosis with which he disagreed) and with fatigue, although the latter may well have a psychological component to it. In 2016 he developed tinnitus and tests showed some high frequency hearing loss. He was eventually prescribed medication (Prozac) for his mood disorder and he showed symptoms during examinations such as paranoia and anxiety. The records also show a history of substance abuse (alcohol) and a diagnosis of personality disorder accompanied by anger and by delusions.

The most pertinent treatment records come from Dr. Cass, who began treating Plaintiff in 2019. Plaintiff told Dr. Cass he had been suffering from fatigue since 1991 although there were a few years when it was in remission. He also had sleep apnea for which he had been prescribed a C-PAP machine but he could not tolerate it, and he suffered from pain in his back and shoulders. Findings on the initial physical examination were normal. Dr. Cass diagnosed chronic fatigue syndrome, fibromyalgia, and obstructive sleep apnea, and he prescribed various medications over the next several visits, adding additional diagnoses including PTSD, panic and anxiety disorders, and alcoholism.

### C.  Opinion Evidence

In addition to testifying at the administrative hearing, Dr. Washburn completed

interrogatories and a physical capacity form.  He noted there as well the fact that there seemed to be no functional limitations associated with a reported history of myocardial infarction and that the records also showed a history of sleep apnea, pulsatile tinnitus with subjective hearing loss, and chronic fatigue associated with a psychiatric disorder.  He did not believe that any of the criteria for disability under the Listing of Impairments had been met, and stated that Plaintiff could frequently lift and carry up to 100 pounds, had no restrictions on his ability to sit, stand, or walk, could continuously reach and use his hands, could only occasionally climb ladders and scaffolds, could frequently balance, could occasionally work around unprotected heights, and had lesser restrictions on being around other workplace and environmental hazards.  (Tr 1054-62).

Dr. Cass also completed a physical treating medical source statement.  At the time he did so, he had been treating Plaintiff for approximately one year.  Dr. Cass described Plaintiff's symptoms as including extreme fatigue, night sweats, memory issues, sleep apnea, dizziness, nausea, poor balance, anxiety, and depression.  He thought that Plaintiff's symptoms would frequently interfere with his ability to maintain concentration and attention and that he could not perform even a low stress job.  (Tr. 1028-32).

The record also contains some opinions from state agency reviewers, but they did not find sufficient evidence in the record to reach any conclusions about Plaintiff's functional capacity.

### D.  New Evidence Submitted to the Appeals Council

After the ALJ's decision was issued, Plaintiff submitted additional evidence from Dr. Cass.  That evidence consists of another medical source statement, similar to the one he completed earlier, but dated in June, 2021, by which time Dr. Cass had been treating Plaintiff for two years.  This time, he listed cognitive impairment and musculoskeletal pain as Plaintiff's symptoms and identified various psychological conditions including depression, somatoform disorder, anxiety, and personality disorder.  Dr. Cass also repeated his conclusion that Plaintiff was not capable of performing even a low stress job, and he added psychological restrictions relating to Plaintiff's ability to ask simple questions, request assistance, interact with the public, accept direction from supervisors, interact appropriately with coworkers, deal with stress, and work independently.  (Tr. 1095-1102).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if

the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. Evidence Submitted to the Appeals Council

As his first argument, Plaintiff contends that the Appeals Council erred by rejecting the new evidence from Dr. Cass on grounds that it was not reasonably probable that if the ALJ had considered the evidence the result of the case would have changed. More specifically, he notes that Dr. Cass's opinion as to additional mental limitations could well have caused the ALJ to alter the outcome of the case, and faults the Appeals Council for reaching the opposite conclusion through the use of boilerplate language and without articulating any supporting rationale. Citing to the applicable law, which requires such evidence to be both new and material if it is to be taken into account, he argues that there is no dispute that the opinion is new, and asserts that it is material because it contains various mental limitations, such as a restriction on interactions with others, that should have been included the residual functional capacity finding. In response, the Commissioner points out that the Appeals Council's refusal to consider new evidence is not reviewable by this Court and that the key question is whether, taking Dr. Cass's new opinion into account, the ALJ's decision is supported by substantial evidence - which, according to the Commissioner, it is, because the same reasoning used by the ALJ to discount Dr. Cass's earlier statement that Plaintiff could not tolerate even low stress jobs applies equally to the new opinion.

This Court has stated the basis for its review of an administrative decision where the Appeals Council declined review - which is what happened here - as follows:

"If the Appeals Council denies review of a case, the ALJ's decision, and not the

Appeals Council's, is the final agency decision." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). But in *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996), the Second Circuit joined the majority of circuits to conclude that "[n]ew evidence submitted to the Appeals Council becomes part of the administrative record for purposes of judicial review when the Council denies review." Because the Appeals Council denied review here, this Court's "review focuses on the ALJ's decision," *Lesterhuis*, 805 F.3d at 87; but in light of *Perez,* this Court's review must and will include the new evidence submitted to the Appeals Council....

*Westhoven v. Comm'r of Soc. Sec.*, 2019 WL 1541053, at *6 (W.D.N.Y. Apr. 9, 2019). Put a different way, the question is to be answered by the Court is whether "the additional records submitted to the Appeals Council render the ALJ's decision unsupported by substantial evidence." *See Mark D. v. Comm'r of Soc. Sec.*, 2021 WL 4059326, at *3 (W.D.N.Y. Sept. 7, 2021). The Court now turns to that question, which requires an in-depth examination of the basis of the ALJ's decision.

After summarizing the medical evidence, which included periodic reporting of bipolar symptoms but also examinations where Plaintiff's mental status appeared unremarkable and where he reported doing part-time work, the ALJ turned to a consideration of the opinion evidence. He first determined that Dr. Cass's opinion, rendered after having seen Plaintiff on three occasions, was "not very persuasive based on minimal medical evidence of record to support such extreme limitations that are inconsistent with his own treatment records." (Tr. 26). The ALJ then cited to specific portions of the record which showed "consistently normal physical examinations including normal cognitive ability with adequate performance of activities of daily living functioning and consistently negative depression screening." *Id.* The ALJ also pointed out that Dr. Cass did not provide much explanation for his conclusions.

Next, the ALJ considered Dr. Washburn's interrogatory responses and his hearing testimony and concluded that the opinions he expressed were "most persuasive," reasoning that Dr. Washburn had "fully examined the medical evidence of record" and that his opinions were consistent with the record because it contained "essentially normal physical and mental health findings." (Tr. 27). The ALJ also noted that when Plaintiff complied with his medication regiment, he had additional mental focus and clarity. As a result, the ALJ determined that Plaintiff had the residual functional capacity to do simple work at the heavy exertional level with postural and environmental restrictions. As noted above, the Court must now determine if, considering Dr. Cass's later opinion, the ALJ's decision is still supported by substantial evidence.

There are numerous reasons for determining that evidence submitted after the ALJ has made a decision divests that decisions of substantial support. For example, in *Mark D., supra,* the additional evidence related to a physical condition that the ALJ had determined to be nonsevere based on the lack of any evidence in the record as to the severity of the condition. Once such evidence was made a part of the record, that conclusion became unsupported. This Court has also noted other situations where the additional evidence undercuts what may have

otherwise constituted substantial support for the ALJ's decision.  *See Mary F. v. Comm'r of Soc. Sec.,* 2022 WL 2662973, at *6 (W.D.N.Y. July 11, 2022)(explaining the reasoning behind decisions like "*Vosburgh v. Comm'r of Soc. Sec.*, No. 17-CV-6587P, 2019 WL 2428501, at *5 (W.D.N.Y. June 11, 2019) (new treatment notes were material because they contained new diagnosis of fibromyalgia); *Kellner v. Comm'r of Soc. Sec.*, No. 17-CV-947S, 2019 WL 2559516, at *5 (W.D.N.Y. June 21, 2019) (new treatment notes and imaging studies were material because they showed that initial success of back surgery, which was integral to ALJ's decision, did not continue)."  On the other hand, new evidence that speaks to conditions already evaluated by the ALJ, and which appear to be in conflict with evidence already in the record concerning a claimant's limitations, does not ordinarily detract from the sustainability of an ALJ's decision.  *See, e.g., Graham v. Berryhill*, 397 F.Supp.3d 541(S.D.N.Y. 2019); *see also Shaun L. v. Comm'r of Soc. Sec.*, 2023 WL 355050, at *4 (W.D.N.Y. Jan. 23, 2023) ("if the newly-submitted records are merely repetitious of evidence already in the record and considered by the ALJ (and if the ALJ correctly interpreted the prior evidence), the Appeals Council's denial of review does not provide a basis for remand").

Here, the new evidence consists solely of an additional functional capacity form completed by Dr. Cass.  There is no indication of how many additional times Dr. Cass saw Plaintiff, nor are there any additional treatment notes.  Although Dr. Cass did identify some additional limitations, including restrictions on Plaintiff's ability to tolerate interactions with others, there is little to no evidence to support that restriction.  The ALJ found that, even considering Dr. Cass's prior opinion (which the ALJ provided sound reasons for discounting), Plaintiff could perform the mental demands of simple, routine work.  This case simply does not resemble those instances where the newly-supplied evidence undercuts the basis for the ALJ's decision, and, as a result, Plaintiff's first claim of error does not warrant a remand.

## B.  Residual Functional Capacity Finding

In his second claim of error, Plaintiff argues that the ALJ "formulated the mental RFC out of whole cloth" and "failed to properly explain how he (sic) concluded Plaintiff could perform the specific RFC."  *See* Doc. 8-1 at 16, 21.  He also faults the ALJ for failing to include all of the documented mental limitations.  In support of the first proposition, Plaintiff points out that Dr. Cass was the only medical source to express an opinion as to mental limitations and that after finding this opinion not to be particularly persuasive, the ALJ simply substituted her own lay judgment for that of Dr. Cass.  Secondly, Plaintiff asserts that the ALJ did not supply any clear rationale for her finding, thus leaving the Court without a basis for review.  And he argues that the ALJ did not adequately account for Plaintiff's limitations in the area of concentration, persistence, and pace.  The Commissioner, in the responsive memorandum, counters that the residual functional capacity finding was properly based on the ALJ's consideration of all of the evidence; that the ALJ properly explained how she formulated the mental residual functional capacity finding; and that a limitation to simple routine work adequately accounts for moderate limitations in concentration, persistence, and pace.

Both parties agree that a residual functional capacity finding need not mirror exactly any

particular medical opinion of record, and this Court has endorsed that concept on multiple occasions. *See, e.g., Peter M. v. Comm'r of Soc. Sec.*, 2023 WL 154733 (W.D.N.Y. Jan. 11, 2023); *Riley v. Comm'r of Soc. Sec.*, 2019 WL 5287957 (W.D.N.Y. Oct. 17, 2019). Plaintiff argues, however, that, especially where the record demonstrates the existence of complicated mental impairments, it is beyond the capacity of a lay person such as an ALJ to craft a mental residual functional capacity assessment without relying on expert medical opinions to do so. Here, the ALJ found that Plaintiff suffered from one severe mental impairment, bipolar disorder, and she did determine, without placing express reliance on Dr. Cass's opinion - which, as Plaintiff points out, is the only medical source statement concerning Plaintiff's mental limitations - that Plaintiff's bipolar disorder resulted in specific mental limitations. The first question then becomes whether the record permitted her to do so.

As this Court observed in *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018),

> the leeway given to ALJs to make "common sense judgments" does not necessarily extend to the assessment of mental limitations, which are by their very nature "highly complex and individualized." *Nasci v. Colvin*, 2017 WL 902135 at *9, 2017 U.S. Dist. LEXIS 31937 (N.D.N.Y. 2017) (because mental limitations determinations are extremely complex, an ALJ's mental RFC finding cannot be rendered solely on common sense, but requires medical opinion evidence).

This reasoning, as well as the conclusion reached in *Deshotel*, has been reiterated in multiple cases from this Court and from other courts as well.

In a case very similar to this one, *Hershey v. Comm'r of Soc. Sec.*, 2020 WL 1514749 (W.D.N.Y. Mar. 30, 2020), the ALJ also was faced with crafting a mental RFC in the absence of any persuasive opinion evidence. In finding that the ALJ had committed an error requiring remand, this Court said this:

> All that remains in the medical evidence, therefore, are the notes of plaintiff's mental health treatment providers.... These records document plaintiff's reports to her providers concerning her symptoms, activities, and history, and the providers' observations and notes concerning plaintiff's conditions, medication management, and medical advice. [] However, "[i]n the absence of opinion evidence, the ALJ's equating this type of information - treatment notes, observations by Plaintiff's providers, Plaintiff's medications and response to treatment, and activities of daily living - to specific functional capacities, was improper. Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." *Dye v. Commissioner of Social Security*, 351 F. Supp. 3d 386, 392 (W.D.N.Y. 2019). This is especially true for mental impairments. *See Stoeckel v. Commissioner of Social Security*, 2019 WL 5445518, *3-4 (W.D.N.Y. 2019) ("the effect a mental impairment has on one's

ability to work is not the sort of inquiry susceptible to lay evaluation.... the Court concludes that the ALJ erred when he rejected all of the record medical opinions and proceeded to evaluate Stoeckel's mental RFC based on his own lay interpretation of the evidence").

*Hershey v. Comm'r of Soc. Sec.*, *supra*, at *5. This Court further commented, *supra* at *6, on the ALJ's failure to "build a bridge" between the evidence and the RFC finding (which is also one of Plaintiff's arguments here), stating that:

> Because [the] ALJ ... did not directly link any of the evidence in the record to her findings of plaintiff's mental RFC, it is not evident what record evidence permitted her, as a lay person, to reach a very specific RFC that plaintiff can, for example, "perform jobs that require minimal changes in work routines and processes", and that plaintiff "can have frequent interaction with supervisors and coworkers", but only "occasional interaction with the public". [5], p. 17. It is unclear to me "how the ALJ, who is not a medical professional, was able to make this determination without relying on a medical opinion." *Guttierez v. Berryhill*, 333 F.Supp.3d 267, 272 (W.D.N.Y. 2018).

The Court finds the reasoning of that case persuasive, and sees no meaningful distinction between the facts considered there and the ones present here. Although the ALJ's decision contains a fairly thorough discussion of Plaintiff's alleged mental impairments, including an analysis of whether they constituted severe impairments and the extent to which Plaintiff's bipolar disorder caused the various symptoms addressed by the Listing of Impairments, the fact remains that the ALJ determined that Plaintiff had a severe mental impairment and did not have the benefit of any medical opinion describing how that impairment restricted Plaintiff's ability to function in a work environment. It may well be that the limitations stemming from that disorder would not preclude Plaintiff from performing the jobs identified by the vocational expert, or, indeed, other jobs that fit within Plaintiff's physical capabilities, but there is simply insufficient support in this record to permit the Court to sustain the ALJ's decision. There may well be cases where an ALJ may properly craft a mental RFC on the basis of the entire record and without the need to obtain opinion evidence, but this is not one of them. Consequently, remand is required to address this second issue.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 8), **DENIES** the Commissioner's motion (Doc. 12), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**